Good morning. First cases of people, the Taylor 4140060 for the appellant, Elisa Kaliski for the apprentice of Paige Brooks. Ms Kaliski. Good morning, your honors. Good morning. May it please the court. My name is Elisa Kaliski from the Office of the State Appellate Defender on behalf of Staten and Taylor. We've raised several issues in our brief, and I'm prepared to discuss any of them, but I'm planning to focus on the marital privilege and Krankel issues. But again, should this court have questions about any of the issues in the brief, I'm happy to address those. In this case, Staten and Taylor's wife testified to messages that he gave to her, in which he allegedly apologized for fighting her brother and said that he should not have been there. Those messages were intended to be confidential, as they're part of a series of messages in which he's also begging to come back for her to forgive him. So these messages were intended to be confidential in which they were married, and therefore they were inadmissible under the marital privilege. The purpose of the marital privilege is to further marital harmony and to promote full communication between the spouses. And that's what we have here. The two had fought and were on the outs, and she had moved out to Warrensburg for a bit. And he's calling her to beg to come back and apologizing for fighting her brother. They're all coupled together in this communication that goes to the very repair of their marriage. Counsel did not object to these messages coming in, and State never presented the actual text of the messages or the actual verbiage of the messages. It's just his wife's testimony about what she recalled the messages saying. So these messages were clearly, under the plain language of the statute, inadmissible. And what we have here, unfortunately, is because counsel did not object, this court has to consider it as plain error. Although I would submit that this court should be reluctant to find it as an affirmative waiver on Taylor's part, because a waiver is a voluntary giving up of a known right. And here we have something where, after trial, he's filing his pro se motion saying, hey, wait a minute, we're married, how come she was able to testify about this? So if anything, I would look at it as a question of forfeiture versus him voluntarily waiving the privilege. We have here a case with a single occurrence witness, his brother-in-law, who's been impeached with private felonies, who has at least somewhat a motive to embellish. We have the evidence in the case conflicts about Taylor's right to even be at the house, because the complaining witness says that Taylor told him that his wife was letting him stay there for the week. She agrees she was out in Warrensburg during that time. She never affirmatively says, no, no, I never told him that. So there's some conflict as to that, and that's the address that he had registered with his parole officer. The evidence was a little conflicted as well on the question of how... But we don't know why counsel did not object. We do not, but there's no possible strategy that would justify failing to seek to bar what constitutes or appears to constitute an admission to the offense. It could not have been trial strategy. No reasonable trial strategy would justify this, because even if you thought, for instance, that, well, you know, he's apologizing for fighting the brother, and maybe there's something we can do with that. You can already, excuse me, present, rely on other evidence in the state's case to make that same point. What would that have been? I'm sorry? What's the other evidence? Well, so Sigmund testified that during this confrontation between him and Taylor and this third individual, that Mr. Taylor pulled this third individual off him and said he's had enough. So you could go, just based on that, to argue that Mr. Taylor has realized that this is too much. It's done. This fight is ridiculous. You could rely on that without needing the statement, you know, I'm sorry for fighting your brother. So there's no rationale to do it, especially because it undercuts the defense strategy of showing that Taylor had a right to be there. Part of the defense strategy was to say, you know, this is the address Taylor's got registered with his parole officer. I thought part of the defense strategy was to obtain a domestic battery conviction rather than a felony. Well, I think his ultimate goal in opening statements was to obtain a complete acquittal. In his opening statements, he says, I want you to find him entirely not guilty. And in closing, counsel argues in part that Mr. Sigmund is not credible, in part because of his prior convictions, and that the jury still had to find all of the elements of the offense beyond a reasonable doubt. So counsel is not there saying, hey, you know, we don't care if you find him, that it's cool, we admit that it's the lesser offense. I think there may be some strategy on counsel's part, just based on Sigmund's testimony, but that was not counsel's only strategy. Counsel's main strategy was to say, he's got a right to be here. He has a right to be at this house. Well, the brother was beaten pretty badly, wasn't he? Right. So how does the strategy of, well, he had a right to be there, didn't knock this guy senseless, is that how that works? No. I'm not sure I understand the argument that, well, he's got a right to be here, that's our defense. Well, it was not the only part of his defense. What was the other part of his defense? The other part of his defense is that Sigmund is not being credible about how the altercation went down. No one's disputing that he sustained the injuries that he did. The question is how he sustained them. Well, Sigmund wasn't, Dawnette wasn't there, was she? No, she was not. Okay, so who was there who testified? Just Sigmund. And he got beaten up pretty badly, didn't he? He did. And who contradicted his version of events? What was contradicted was there was some indication in opening statements that it was not quite as clear-cut as Sigmund testified to. So he said, I got knocked around, I got beaten, I got stomped on, including by this defendant and someone else assisting him, and maybe there was uncertainty as to the number of blows or the number of kicks and whether or not the defendant was legitimately standing in the driveway when he beat this guy up. Correct. And that's a defense how? The defense strategy was that this was more of a mutual altercation that sort of got out of hand. What's the evidence of the mutualness of it? That comes largely from opening statement, unfortunately. Oh, counsel's testimony, in other words. Right, because Mr. Taylor did not testify. Now, the jury's told they can disregard. That's true. But they still have to consider Mr. Sigmund's credibility. And he has been impeached by his prior felonies. If you look at the actual evidence in the case, there's a lot about the case that doesn't quite make sense. For instance, this idea that Sigmund just happens upon Mr. Taylor there. The record suggests definitely that Donette and Mr. Taylor were texting back and forth earlier in the day about his having cheated on her. And Taylor tells Sigmund that she's letting him stay there. I think the record supports an inference that it's possible that she knew Mr. Taylor was going to be there. She's angry about his infidelity, and she sends her brother over there. Does the record show the defendant chose not to testify? It does. Okay. So if you have a defendant who doesn't want to testify, why wouldn't the testimony or what counsel did be designed to try to put them in a better light than if none of that were there? I mean, it shows, gee, I'm such a sorry guy. You know? Because all this stuff happened, and maybe, you know, in retrospect, I've learned my lesson, and I'm really saddened by what I did. But at the time that Donette testifies, counsel still believes Mr. Taylor is going to testify. How do we know that? Because in the record, after the state rests, the defense attorney says, well, we're going to put on this stipulation, and then Mr. Taylor is going to testify. And then they do the stipulation, and that's when Mr. Taylor changed his mind. If counsel said, I don't think the defendant is going to testify, then you wouldn't be here making the argument? I don't know. Well, doesn't this suggest, as Justice Turner said, that there are things going on here that maybe we need to hear from defense counsel as to what he was told, what he believed, and why he did what he did before we conclude that this was ineffective? Well, you don't have to find ineffectiveness on the first issue. You could find that because this is a case with a single occurrence witness, that this merits plain error review. But one of the issues as well that we raise in the brief is the Krankel argument that, you know, this is one of the complaints that Mr. Taylor made in his pro se motion. It's how come my wife got to testify when we're married? Why was she allowed to testify against me? So at a minimum, in addition to the other complaints in his Krankel motion, at a minimum, that merited further inquiry. And so, you know, at a minimum, I think this court should send it back for a Krankel inquiry that would include a question of why counsel did not object. Why a Krankel inquiry and not just say go file PC so we can actually have a full hearing in which the defense attorney won't be making representations. He'll be a witness. He can testify. He can be asked questions. Well, you know, the point of a Krankel inquiry is to get into a full and fair meaningful opportunity for him to flesh out his claims to foreclose things down the road. Well, no, actually it's to decide whether we need to appoint an attorney for him. Right, right. So why not just say skip that entirely and say let's have a PC file? Because, and this goes into my Krankel argument as well, that the case law is very clear that when the judge's Krankel inquiry is inadequate, it has to go back to that. We don't just send him, say, hey, go file a PC down the line. We say, let's send it back. The judge can ask about all of your complaints. You will know that you're up for the judge to ask you about all of the complaints. And this is one where Mr. Taylor sends a pretty detailed letter to the judge with all of his complaints against his attorney. And the original trial judge who gets it looks at him, looks at the letter, sends him some information on the marital privilege, and then recuses himself. The original trial judge, I think it's a fair inference to say, was obviously a little troubled by what was in that pro se motion. And when it comes in, when the new judge brings Mr. Taylor in, first of all, there's no indication that Mr. Taylor ever got the first judge's letter that, hey, this triggers a Krankel inquiry. Does that matter? Well, I mean, it goes to his ability to be prepared for the hearing. So if he doesn't know why he's being brought to court that day, there's no indication in the record he had a copy of his motion that he filed with the judge. He doesn't know when this hearing would be, and so he's in there for unclear reasons. And the new judge is saying, tell me what you... Didn't the judge ask the defendant about each of his concerns and then get a response from defense counsel regarding each? He did. But this is, again, an instance where he's got the separate motion, of which the judge and defense counsel, everybody's clearly aware. And the defendant, there's no indication that he realized this is his chance. He's got to go through every single thing in that motion. And you have, as well, certainly some colloquy between the judge and the defendant and defense counsel is sufficient. But most of that case law, I think nearly all of it, involves cases in which the trial judge is also the one doing the inquiry. The trial court, what? Where the trial court is also the one doing the Krankel inquiry. So that's a requirement? Well, my point is, normally a trial judge can, in part, rely on his knowledge of what happened at trial when he's considering a Krankel hearing. And here, it's a different judge. He knows nothing about the case at that point. So he can't rely on his knowledge of what happened at trial because he doesn't have it. So he has to flesh out all of Mr. Taylor's complaints. And in a case where Mr. Taylor's got a laundry list of complaints and there's no indication that he knew he was coming for a hearing, when the hearing would be, that he's got a copy of his motion in front of him, it does not fulfill the purpose of Krankel to say, well, those three complaints are all of it. Plus, you have, as well, the Supreme Court idea of, you know, you need to, you're going to be very reluctant to find a waiver of complaints of ineffective assistance of counsel because it involves this bedrock right to his effective attorney. And it makes sense to do it all at a Krankel hearing because you've got the defense attorney there, you've got the defendant there, the case is still fresh. But by doing part of it and then not inquiring into the rest of the motion, you're now in a situation where two and a half years later, you know, who knows what Mr. Taylor would say or what defense counsel would say. So really what the judge did here sort of hamstrings, not hamstrings, it turns it into a piecemeal process that defeats the entire purpose of a Krankel inquiry, which is to get into all of it. I'm not sure I'm following. What are you saying was inadequate about the Krankel hearing in court here before? The judge here was aware of this motion that had several allegations in it, including a marital privilege allegation, including a failure to present evidence that Taylor went to the hospital, including a failure to advise Mr. Taylor of what the sentencing range was if he was convicted. All of those things that the judge is aware of that's in the motion. PD tells the judge, you know, this motion is alleging my ineffectiveness. But the judge never asks about any of those. And this court in Peacock has said that all he has to do is bring it to the judge's attention. Filing that motion was enough, but the judge did not ask about any of those. So that's what's inadequate about the judge's inquiry here. And this too is, you know, the Illinois Supreme Court has mentioned again in Jolly that this is, you know, you have to get a full and fair opportunity for the court to consider the defendant's claims. And that was not shown here. And so the Krankel inquiry on its own was insufficient. And at a minimum, you know, that's what we think this case should be sent back for. At a minimum. And that would in part get to what Justice Steigman was saying about, well, we don't know why counsel didn't object to Donat's testimony on that point. Going to another one of your arguments, I don't understand your contention that the state improperly vouched for the credibility of Sickman by arguing that his kind of cooperation with the police is how you would expect a victim of a crime like this to act. How is that an improper argument? The state in that comment is telling the jury that he's credible because he cooperated with the police and that's how you would expect a crime victim to act. Why is that improper? Because there's no evidence that that's how real crime victims would act. You mean the state has to present evidence and somehow to show here's Officer Smith and his 23 years' experience as a police officer, how do crime victims normally act? Well, this is how they act. Then it can make the argument? Then it would be a comment supported by the evidence. What about the notion that the jury may consider common experiences and use their common sense? They're told about common experiences in life and instructions. Would this be a common experience that a victim of a crime would cooperate with the police? I don't actually know that it is. In fact, the victim in this case did not initially want to get the police involved at all. Okay. But that's not the issue here. The issue is, is this an improper argument? Yes. It's an improper argument because they're explicitly saying they are credible because they cooperated. What case stands for this proposition? That saying that they're credible because they cooperated is improper? Yes. Would we be the first in American jurisprudence to so hold? I don't know if you would be. But I don't think it's really much different from the Bell case in which you have a state's attorney telling the jury that a defendant's confession is credible because people have a natural desire to tell the truth. That was a decision of the third district 20 years ago. Was it right? Then why should we follow it? I think it's right because it's definitely right and you should follow it. Because it becomes essentially an argument that's unsupported by any of the evidence at trial. It becomes a way for the state to bolster the credibility of its witnesses. And here it's an explicit bolstering saying they are credible because they cooperated. So I think Bell is good case law and you should follow it in your decision. And that looks like I have just a moment left here so let me close up here. But I think Bell certainly would control in this case. I'm not aware of a decision from this court. Well, it doesn't control. It's persuasive. I'm sorry. If we choose to follow it. Right. I misspoke. I just don't understand why a prosecutor or a defense attorney can't, during closing argument, argue reasonable inferences to be drawn from the evidence based upon what the jury has told in the instructions. You may consider all this evidence along with your common experiences in life. Why isn't this argument entirely consistent with what you would expect? Victims of crime would cooperate with the police. Because not all victims do. And therefore to argue that that's the norm constitutes improper closing argument rendering a fair trial no longer present? In a case with a single occurrence witness where you're explicitly bolstering his credibility by saying that he's credible because he cooperated. The state put on Officer Danner to testify. They certainly could have asked him when they're asking him, well, wasn't he cooperative? They could have said, well, in your experience, does that jive with. That would have been appropriate to inquire? I think, you know, at least then there would be some evidentiary basis. Objection, Judge. That's irrelevant. It's got nothing to do with this case. And why do we know about him and other witnesses and other cases? Well, I, you know, states could. Well, this trial, Judge, would likely say sustained. I would be surprised that the state would think that there would be a need to ask a question like that. Well, I think, you know, I just don't see that this is the sort of thing that rises to the level of everybody knows it. It's not the same sort of thing as everybody knows you stop at a stop sign. Counsel, you're out of time. But you will have rebuttal. All right. Thank you. I'll ask this Court to reverse the amendment. Ms. Brooks. Good morning, Your Honors. May it please the Court and Counsel. I'm Allison Page Brooks, appearing on behalf of the people. Because the marital privilege was never invoked in the trial court, it is forfeited. The state's not relying on affirmative waiver, but it is forfeited. And therefore, when the defendant claims plain error, it becomes incumbent on him to persuade that it's clear or obvious that an objection on the basis of an invocation of the marital privilege would have been sustained. In order to do that, the defendant, as a proponent of the privilege, has the burden of establishing every element of the privilege. And because this is a plain error review, he has to show that it's clear or obvious that the privilege would have applied. And relying solely on the content of the text messages, because he did not testify or say what he intended when he sent those messages, all that this Court has on the record is the content of the messages themselves. And in order for the privilege to apply, the message has to be intended to be confidential. And that has sort of a special, restricted meaning. It means that it had to have been conveyed in reliance on the marital relationship, and thus would not have been made but for, and have been prompted by, the affection, confidence, and loyalty of the marital relationship. And in these facts, where the parties are separated, and the defendant who is motive for sending the messages, as he says, is to try to get back with her, to resume the marital relationship. But that does not mean that he would not have admitted what he did, battering his wife's brother, but for having confidence that she is going to keep that confidential. That does not seem to be apparent, at least obviously apparent, from the content of the text messages themselves, and solely from the content of the text messages themselves, because that's all that's in the record. Without that showing, there's no basis for this Court to reverse, as a matter of plain error, on the basis of the admission of evidence, what defendant claims to be in violation of the marital privilege that was never invoked. Of course, he does allege ineffective suits of counsel, but then that arises a different problem in the sense that the record is also not sufficient for the defendant to overcome the strong presumption that there could have been trial strategy. And of course, the defendant's argument here is, well, no conceivable strategy, no possible strategy, could have justified the defendant standing by, letting this type of evidence admitted into the record. That argument would only have force if there's no possible or beneficial use to the evidence. But instead, what defense counsel did is defense counsel capitalized in closing argument on the evidence that the defendant had apologized to the wife for his conduct, and then argued, is this, to the jury, is this the action of someone who knowingly causes great bodily harm to another person, which was the main contested element of the crime. So the defense counsel did leverage this evidence in closing argument in an effort to try to get the jurors to find reasonable doubt that he had knowingly intended, I'm sorry, knowingly caused great bodily harm to Joshua Sigman. So in that respect, this is something where there is conceivable benefit that would make it be that, if it were prejudicial, this court could still then defer consideration of the issue to post-conviction proceedings to wait for their development of a record. If it's not prejudicial, then this court does not have to consider whether defense counsel acted reasonably or unreasonably, because the defendant has the burden of showing both unreasonable assistance and prejudice. So failure to make the prejudice prong would therefore moot whether the counsel acted reasonably or not. And the issue could be disposed of solely on the ground of lack of sufficient prejudice. Also, even if there is a clear or obvious error, the defendant also has the burden of proving, persuading that the evidence of his guilt was closely balanced. And of course, this is the case where the defense counsel, in response to the victim's unrebutted testimony, that he was battered by the defendant, then admits to the jury in closing argument that they could convict him of battery and that they're not contesting that he did, in fact, batter Joshua Sigmund. So the only thing that was contested is whether the defendant knowingly caused great bodily harm. And so it was his mental state that was at issue, and the admission that is contained in the text message does not prejudice the defendant with respect to the element that was contested, his mental state of knowledge in terms of inflicting great bodily harm on the victim. So in that respect, there is not a prejudicial error in a closely balanced case. The other reason why it's not closely balanced is because there's independent observation of injuries to the defendant's hand, which tends to corroborate the fact that he battered Sigmund that day. And also, Sigmund's injuries to his body was subject to photographs and stipulated medical testimony. So there's corroboration that Sigmund says that he was battered and that he was injured. And therefore, the sort of claim could be that, well, I think by the defense, was that there were problems with the state's case in respect to Sigmund's credibility. There were some holes in the issue, according to the defense. But it still isn't anywhere close to rising to reasonable doubt as to whether the defendant battered him or not. It's not a situation where, oh, the defendant also was apprehended when he came back to the scene of the crime. This occurred in a location to which the defendant had ties. And the defendant, of course, was related through marriage to the case. Does the record show anything about why the defense counsel, or what the defense counsel said or did with regard to the admission of the recordings and the marital privilege issue? I'm sorry, you'll have to please repeat that. Pardon? Could you please repeat the question? Yes. Does the record contain any indication of how defense counsel was thinking about this marital privilege issue when the tape comes on in? In other words, I suppose if I were the trial judge in a situation like this and something like this were presented, I might say, is this a tape from the husband to the wife here? And maybe to raise this question or have defense counsel say, by the way, judge, I understand this is a marital privilege thing, but I have no objection to it, or words to this effect, or the record is all silent. I don't know that there's anything in the record that addresses this particular question in terms of whether, I think the counsel assumes that, appellate counsel assumes that the trial counsel had been ignorant of the marital privilege and that is the reason why there was a lack of objection. But under Strickland, this court is not allowed to presume that counsel was ignorant of the law. Counsel has to be presumed to have acted in exercise of reasonable professional judgment, unless there's a showing to the contrary, which there's not in this record. So therefore, if the record is silent as to the issue, the presumption has to be made that counsel did in fact provide reasonable assistance. And so that's why the issue could be deferred to post-conviction proceedings, because then the defendant would have an opportunity to make the allegation in the petition, for example,  So, do I understand correctly from your brief that, or is my understanding correct, that in your brief you're not conceding that the marital privilege would even apply to the tape? Correct. The defense position is that these were undoubtedly intended to be confidential, but the state's position is that it is not clear or obvious as a matter of plain error, because it was never litigated below in the sense that there was no, So, its proponent of the privilege has the burden of establishing every element, including that these messages were intended to be confidential, and we have only the contents of the messages themselves in the context, essentially, that they were issued. And the context tends to cut against the defendant, and the content of the messages doesn't really inform exactly why the defendant sent them, other than, as he says, he's trying to get back with the wife in terms of resuming a relationship. But it really has to be that these messages would not have been conveyed but for the confidence that would have been held in terms of the context of the marital relationship. And it does not seem to be the case, at least to the level of obviousness, necessary to reverse on the grounds of plain error. So, whether the trial court would have had discretion, for example, to uphold the assertion of a marital privilege is not the issue, essentially. With respect to the issue of IPI number 3.12, this is limiting instruction that does not have to be given sous-fante. I think that Barrow case makes that plain. And therefore, when IPI number 102 authorizes the jury to evaluate witness credibility in light of all the evidence, which, of course, includes the witness's prior conviction, that's not a ground for reversal. With respect to closing argument, this court makes it clear in Pope that there has to be explicit vouching. And, of course, the defendant says in her reply brief that there was something explicit here. Well, there is an explicit remark, but there's not an explicit expression of personal opinion as to the credibility of the witness. And therefore, the argument about the comment on the credibility was not, in fact, personal vouching for the witness's credibility. It was an argument under the beard, for example, relying on the common sense and experience, directing the jurors to apply their common sense and experience. There were some misstatements of belief, but they were not substantially prejudicial, thus not reversible error, and therefore would not qualify as plain error. And there was no suggestion that the confrontation that Donnet Taylor feared from the defendant was, in fact, would be a violent one and, therefore, not a prejudicial argument and was, in fact, a proper argument based on evidence. With respect to Krankel, the trial court asked the defendant about each of his complaints in the series until he responded that that was pretty much it. So under the toll-free case, which rejects the claim that there has to be a colloquy with the defendant or the defense counsel with respect to every single issue, it seems like this can be an adequate inquiry even though the trial court did not intend to be in a colloquy with either defendant or defense counsel as to every single issue contained in the defendant's pro se complaints. So, therefore, there's no basis for issuing a remand for the Krankel proceedings. With respect to the 15-year sentence, which is alleged to be excessive, the defendant relies heavily on the content of the four-year plea offer that he alleges that was made by the prosecutors. And even without needing to consider whether that was, in fact, given to the defendant before trial, a plea offer is an inducement for the defendant to plead guilty and as a bargain for a sentence less than ordinarily warranted. And so, therefore, if a four-year plea offer is not otherwise warranted, then the state's position is that a 15-year sentence was, in fact, otherwise warranted for this crime. And so, therefore, the plea offer should be ignored. With respect to the trial, the defendant did testify at sentence, whereas he did not testify at trial. He provided a version of events that minimized his culpability at the sentencing hearing, but this court can just simply rule that the trial court was not required to accept the credibility of the defendant's sentencing hearing testimony that minimized his culpability. The trial court cited the need to protect the public. The defense prior record included acts of violence and he was still on mandatory supervised release. So for the type of crime, violent crime, and damage that was inflicted to the victim, 15-year sentence was not excessive. For those reasons, I'd like to thank the court and request this court to affirm if you have no further questions. I see none. Thank you. Any rebuttal? Just a few points, Your Honors. First of all, a matter of clarification. The messages from Mr. Taylor to his wife, the actual text of the messages, never were admitted at trial. So we're going just off her recollection of what they were. Is that better or worse? Well, I think at least then you'd be able to, as it is here, we have her saying that he was sorry for fighting his brother. Her brother, and that he shouldn't have been there. But we don't know who he means, and when she says, he's sorry for fighting, we don't know exactly what the language of that message was. So we're relying on her recollection of the messages and her veracity as to what they said. So this is not quite an instance where the state's like, hey, I've got a tape of their messages, or let me print these messages and put them on a poster board for the jury. This is just her testifying about what he said. At that point, it was at least a year, I think, after the offense. So that, I think, bears some of the prejudice to Mr. Taylor from admitting her testimony. The fact that they were separated is irrelevant for purposes of the marital privilege. The Supreme Court in Tresiac, the marriage there was described as being in shambles. And the court did not reject privilege on that basis. And Dubinowski looked at a marriage where they were estranged, and nonetheless, the privilege applied. How is the offer of the state of four years and a guilty plea relevant to the ultimate sentence the trial judge imposed in this case? As opposed to Cook County, I'm assuming the judges in Macon County aren't involved in the plea bargaining process. It goes mostly to demonstrating that it was an abuse of discretion. The state's brief talks a lot... How does it do that? Because this is a case that, you know, in pre-trial, the state seemed to think was worth a lot less than 15 years. Why does that matter to the trial judge in sentencing what the state was willing to offer the defendant to plead guilty? Well, he takes arguments from both sides about what they feel an appropriate sentence would be. And so I think it bears some on how he exercises his discretion in sentencing him. Well, counsel, I was a trial judge for 12 and a half years and sentenced hundreds of people to prison during the course of that time. Back then, before we were aware of the problems that could come up, I would insist that, in plea bargaining, I would insist that the attorneys never even tell me what the plea agreement may have been or what offers may have been made prior to trial to ensure that at the sentencing hearing I was exercising my independent judgment. Now we have to make a record, I think, of what the plea offer may have been because of post-conviction concerns and all the rest. But it still seems to me that whatever, it's kind of like in a civil case. There are negotiations on what's selling a case for X dollars. Should the jury be told about that? Should that affect the jury, what it decides what a damage award would properly be? I believe that's inadmissible for a jury to do. Well, why isn't it equally inadmissible what the negotiations have been between the state and defendant when the judge, as an independent actor, is deciding in the judge's judgment what is an appropriate sentence?